THE STATE OF NORTH DAKOTA *vs.* MINNEAPOLIS & NORTHERN ELEVATOR COMPANY.

Opinion filed July 2nd, 1896.

**Taxation—Assessment—Ownership.**

> Under the revenue law of this state, which requires personal property to be listed and assessed as of May 1st in each year, when prior to that date an elevator compnny had sold the wheat in a certain elevator, in good faith, and. for full value, paid in cash by the purchaser at the time, it was error to assess such wheat to and against the elevator company, although it was not shipped out of the elevator until after May 1st next succeeding.

Appeal from District Court, Grand Forks County; *Templeton,* J. Action by the State of North Dakota against the Minneapolis & Northern Elevator Company. Judgment for plaintiff, and defendant appeals.

Reversed.

*Cochrane & Feetham,* for appellant.

*J. G. Hamilton, States Attorney,* for respondent.

BARTHOLOMEW, J. This case arises under the revenue law. The facts are stipulated, and found by the court as stipulated. The case turns entirely upon this question of law: Was the appellant, the Minneapolis and Northern Elevator Company, on the 1st day of May, 1895, under the conceded facts, the owner of 34,000 bushels of wheat in its elevator at Inkster, in Grand Forks County? That this amount of wheat was in such elevator on such date is admitted. The taxing officers of Grand Forks County assessed the same to and against the appellant, and, the same becoming delinquent, a citation was issued requiring appellant to show cause why judgment should not be entered against it for the amount of such tax. No question is made upon the regularity of the proceedings at any stage. On the return day the appellant appeared and answered. The facts were then stipulated, and upon the facts as stipulated and found the court made conclusions of law in favor of respondent, and entered judgment against appellant for the amount of the tax. This

appeal is from the judgment. The statute then in force —Subd. 9, § 7, Ch. 132, Laws 1890—provides that: "Personal property shall be listed and assessed annually with reference to its value on the first day of May." Counsel for the state concedes that appellant is not liable in any capacity other than as owner. The sixth finding of fact is as follows: "That on the 1st of May, 1895, and during the entire months of May and June, 1895, there was in store in the elevator of this defendant at Inkster, aforesaid, 34,000 bushels of number one Northern wheat, all of which had been purchased by this defendant from farmers prior to the 14th day of February in said year. That on the 14th day of February, 1895, in the due and usual course of business, this defendant sold to A. D. Thompson & Company, of Duluth, Minnesota, 150,000 bushels of wheat, of which the 34,000 bushels in the elevator at Inkster formed a part, and at said time, and in fulfillment of said sale, did execute and deliver to said A. D. Thompson & Company its warehouse receipts for said wheat so sold, and, among others, its warehouse receipt No. 530, calling for 34,000 bushels of number one Northern wheat in its elevator at Inkster, aforesaid, being all the wheat in said elevator, and said warehouse receipt was in the words and figures following to-wit: 'Charles A. Pillsbury, President. C. M. Amsden, General Manager and Treasurer. Minneapolis & Northern Elevator Company. No. 530. Minneapolis, Minn., Feb. 14th, 1895. Received in store at Inkster, N. D., thirty-four thousand bushels of One Northern wheat, subject only to the order of A. D. Thompson & Co., and the surrender of this receipt and payment of charges. The wheat represented by this receipt is fully covered by fire insurance for the benefit of the holder, and all charges are paid to May 1st, 1895. It is hereby agreed by the holder of this receipt that the grain herein mentioned may be stored with other grain of the same quality by inspection. Freight to Duluth or Superior guarantied. 34,000 bushels 1c grade. Minneapolis & Northern Elevator Co., by C. M. Amsden, Treasurer.' And that said wheat was, on the delivery of said warehouse receipt, paid

for in full, in cash, by said A. D. Thompson & Co. That said sale was made in good faith, in the due course of business, and for full value, as above set forth." In its conclusions of law the court declared that the sale to A. D. Thompson & Co., not being accompanied or followed by an actual and continued change of possession, was illegal, fraudulent, and void as against the state, while valid as between the parties, and hence the wheat was properly assessed against the appellant. Under § 4657, Comp. Laws, a sale of personal property by a vendor in possession, not followed by an actual change of possession, was conclusively presumed to be fraudulent as against creditors and subsequent purchasers from the vendor while he so remained in possession. But § 5053, Rev. Codes, in force when this action was tried, changes the law in that respect, and declares that such a transfer shall be presumed to be fraudulent as against such creditors and purchasers, "unless those claiming under such sale or assignment make it appear that the same was made in good faith, and without any intent to hinder, delay, or defraud such creditors, purchasers, or incumbrancers." Was the state a creditor within the meaning of this statute? Certainly not on February 14, 1895, when the sale was made to A. D. Thompson & Co., and certainly not on May 1, 1895. The record does not show when the wheat was shipped out. But in respondent's favor we may assume, although the record does not warrant it, that the wheat remained in the elevator at Inkster until the tax if valid, became a debt. Would the state then become a creditor? Certainly not, unless we assume the very point in controversy. There could be no debt due the state unless the appellant was the owner of the wheat on May 1st; and if there was another party who, as against appellant, was the absolute owner of the grain, with the unqualified right to immediate possession, it is difficult to perceive how appellant could have any taxable interest therein. But assume that the state was a creditor within the statute, and assume that there had been no transfer of possession, still the transfer was only presumably fraudulent. The court expressly finds that upon the

delivery of the warehouse receipt the wheat was paid for in cash by the purchaser, and that the sale was made in good faith, in due course of business, and for full value. This is an express finding that there was a sale on February 14, 1895, as that was the date of the delivery of the warehouse receipt; and it would be difficult to use stronger language to show that the sale was in good faith, and passed an absolute title. It is therefore entirely immaterial whether the warehouse receipt was effective to pass actual possession or not. The sale, as found by the court, was a good and valid sale as against all the world. The District Court will set aside its judgment in this case, and enter a judgment discharging the citation and canceling the tax on the 34,000 bushels of wheat, and giving appellant the costs of both courts.

Reversed.   All concur.